IN THE COURT OF APPEALS
AT KNOXVILLE

FILED

February 4, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| UNDERGROUND II, INC., d/b/a | ) | KNOX CHANCERY |
| THE BOILER ROOM | ) | C. A. NO. 03A01-9709-CH-00425 |
| | ) | |
| Plaintiff-Appellant | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| vs. | ) | HON. SHARON BELL |
| | ) | CHANCELLOR |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| THE CITY OF KNOXVILLE, | ) | REVERSED AND REMANDED |
| TENNESSEE; VICTOR ASHE, MAYOR | ) | |
| OF KNOXVILLE; PHILIP KEITH, | ) | |
| CHIEF OF KNOXVILLE POLICE | ) | |
| DEPARTMENT; LARRY COX; IVAN | ) | |
| HARMON; CARLEEN MALONE; NICK | ) | |
| PAULIS; WILLIAM POWELL; JACK C. | ) | |
| SHARP; ED SHOUSE; JEAN TEAGUE; | ) | |
| AND GARY UNDERWOOD, IN THEIR | ) | |
| OFFICIAL CAPACITIES, | ) | |
| | ) | |
| Defendants-Appellees | ) | |

JEROLD L. BECKER & SAMUEL W. BROWN, Lockridge, Becker & Valone,
P.C., Knoxville, for appellant.


THOMAS VARLAN, Knoxville City Law Director, CHARLES SWANSON and
WILLIAM A. MYNATT, JR., Knoxville for appellees.

O P I N I O N

McMurray, J.

In this action the plaintiff-appellant (plaintiff) challenges the validity of an ordinance of the City of Knoxville which prohibits the practice of "brown bagging" (bringing your own alcoholic beverage) into restaurants, clubs and businesses between the hours of 1:00 a.m. and 6:00 a.m. Monday through Saturday and 1:00 a.m. to 12:00 p.m. on Sundays. It further makes it unlawful for businesses of any kind to permit or allow any customer to "bring in, carry, possess, or consume beer or alcoholic beverages" during specified times as set out above. The proprietors of the designated places are also prohibited from selling any non-intoxicating beverages to be mixed with and/or consumed with alcoholic beverages between the designated times. The trial court upheld the validity of the ordinance. We reverse the trial court.

The ordinance in question is found in Section 4.2 of the Knoxville City Code which provides in pertinent part as follows:

**SECTION 1:** That Section 4.2 be enacted to the City Code of the City of Knoxville to read as follows:

**Section 4.2:** This section shall make the unregulated possession and consumption of beer and

2

alcoholic beverages in restaurants, clubs and businesses between the hours of 1:00 a.m. and 6:00 a.m. Monday Through Saturday and 1:00 a.m. to 12:00 p.m. on Sundays unlawful.

(a)     It is unlawful for any restaurant, club or any other business of any kind to permit or allow any customers, patrons or invitees to bring in, possess, or consume beer or alcoholic beverages inside or on the premises between the hours of 1:00 a.m. and 6:00 a.m. Monday Through Saturday and 1:00 a.m. to 12:00 p.m. on Sundays which were not sold by the restaurant, club or business as set forth in subsection (c).

(b)     It is unlawful for any restaurant, club or any other business to sell any non-intoxicating beverages to be mixed with and/or consumed with alcohol beverages between the hours of 1:00 a.m. and 6:00 a.m. Monday Through Saturday and 1:00 a.m. to 12:00 p.m. on Sundays which were not sold by the restaurant, club or business as set forth in subsection (c).

(c)     This section does not prohibit any business which possesses a valid beer permit or alcoholic beverage license from selling such beverages to its consumers during such hours authorized by the laws of the State of Tennessee and ordinances of the City of Knoxville.

*     *     *

The plaintiff states its issues as follows:

1.     The Trial Court erred in ruling that City of Knoxville had the inherent power to enact the Knoxville "Anti-Brown Bagging" ordinance, as the State of Tennessee has entirely preempted the power to regulate alcoholic beverages, pursuant to its statutory "dual regulatory plan."

3

2.    The Trial Court erred in ruling that Defendant City of Knoxville's exercise of its police power in enacting the "Anti-Brown Bagging ordinance" was lawful, as said ordinance is arbitrary and unreasonable, discriminatory, and oppressive with respect to the Plaintiff/Appellant.

Our standard of review is de novo upon the record, with a presumption of correctness of the findings of fact by the trial court. No presumption of correctness attaches to conclusions of law. See Adams v. Dean Roofing Co., 715 S.W.2d 341, 343 (Tenn. App. 1986). Unless the evidence otherwise preponderates against the findings, we must affirm, absent an error of law. See Rule 13(d), Tennessee Rules of Appellate Procedure. If the plaintiff is entitled to a judgment, appellate courts have a duty to render judgments which the lower court should have rendered. See e.g., Toomey v. Atyoe, et al, 32 S.W. 254 (Tenn. 1895), and Perry v. Carter, 219 S.W.2d 905 (Tenn. 1949). See also Rule 36(a), Tennessee Rules of Appellate Procedure.

We first should point out that "alcoholic beverages" and beer are not, under the law, synonymous. "Alcoholic beverage" or "beverage" means and includes alcohol, spirits, liquor, wine and every liquid containing alcohol, spirits, wine and capable of being consumed by a human being, other than patented medicines or beer where the latter contains an alcoholic content of five percent (5%) by weight, or less. T.C.A. § 57-4-102. We should

4

emphasize that the term "club" is statutorily defined in the same section of the Code. T.C.A. Title 57, Chapter 3 governs local option and traffic in intoxicating liquors. "Alcoholic beverage" or "beverage" is defined in T.C.A. § 57-3-101 as follows:

> **57-3-101. Definitions.** — (a) Whenever used in this chapter, unless the context requires otherwise:
>
> (1)(A) "Alcoholic beverage" or "beverage" means and includes alcohol, spirits, liquor, wine and every liquid containing alcohol, spirits, wine and capable of being consumed by a human being, other than patent medicine or beer where the latter contains an alcoholic content of five percent (5%) by weight or less. Notwithstanding any provision to the contrary in this <u>title</u> "alcoholic beverage" or "beverage" also includes any liquid product containing distilled alcohol capable of being consumed by a human being, manufactured or made with distilled alcohol irrespective of alcohol content. Notwithstanding the provisions of this definition, products or beverages containing less than one half of one percent (0.5%) alcohol by volume, other than wine as defined in this section, shall not be subject to regulation or taxation pursuant to chapters 1-6 and 9 of this title.

It is apparent that the General Assembly has elected to retain substantial, but not exclusive, control over and regulation of alcoholic beverages. To implement and exercise control over alcoholic beverages the General Assembly created the Alcoholic Beverage Commission. Under "local option," counties and municipalities are empowered to submit the question of permitting the manufacture, receipt, sale, storage, transportation,

distribution and possession of alcoholic beverages within the territorial limits of each. T.C.A. § 57-3-106. The state has retained, through the powers delegated to the Alcoholic Beverage commission, the licensure and administration of the laws contained in Chapter 4, Title 57, parts 1-3. T.C.A. § 57-4-201(a)(2) provides as follows:

> (2) The commission shall make regulations, not inconsistent with this chapter for clarifying, inter-preting, carrying out and enforcing the terms of this chapter, for ensuring the proper and orderly conduct of business by licensees, and for regulating the proper advertising of acoholic beverages by licensees.

No authority has been expressly delegated to municipalities to regulate, license or otherwise control the operation of businesses relating to alcoholic beverages as opposed to beer. Without question, authority over beer and other beverages not falling within the definition of "alcoholic beverage" may be controlled and regulated by local governmental agencies.

We are not willing to state, however, that the State has preempted the entire field of control and regulation of alcoholic beverages. In H & L Mesengers, Inc. v. City of Brentwood, 577 S.W.2d 444 (Tenn. 1979) the Supreme Court stated:

6

The City of Brentwood was organized, and operates under, the Uniform City-Manager Commission. Sec. 6-1801, et seq., T.C.A. By § 6-1901(22), the city is authorized:

To define, prohibit, abate, suppress, prevent, and regulate all acts, practices, conduct, business, occupations, callings, trades, uses of property and all other things whatsoever detrimental, or liable to be detrimental, to the health, morals, comfort, safety, convenience, or welfare of the inhabitants of the city, and to exercise general police powers.

This broad statutory conference of power does nothing more than **codify the general rules relating to the police powers inhering in Tennessee municipalities.** (Emphasis ours).

The right to exercise the police power is an attribute of sovereignty, necessary to protect the public safety, health, morals, and welfare, and is of vast and undefined extent. Davis v. Allen, 43 Tenn. App. 278, 307 S.W.2d 800 (1957). In exercising this right, municipalities have wide discretion and broad powers. Porter v. Paris, 184 Tenn. 555, 201 S.W.2d 688 (1947).

We find further guidance from the following:

State and local governments possess an inherent power, i.e. police power, to enact reasonable legislation for the health, safety, welfare, morals, or convenience of the public. See Nashville, C & St. L. Ry. v. Walters, 294 U.S. 405, 55 S. Ct. 486, 79 L. Ed. 949 (1935); Estrin v. Moss, 221 Tenn. 657, 430 S.W.2d 345, 348 (Tenn. 1968), appeal dismissed, 393 U.S. 318, 89 S. Ct. 554, 21 L. Ed. 2d 513 (1969); State v. Sowder, 826 S.W.2d 924, 927 (Tenn. Crim. App. 1991), appeal dismissed, (Tenn. 1992), cert. denied, 510 U.S. 883, 114 S. Ct. 229, 126 L. Ed. 2d 184 (1993). (Emphasis ours).

7

Martin v. Beer Bd. for Dickson, 908 S.W.2d 941 (Tenn. App. 1995) is also instructive as it relates to the interpretation of municipal ordinances:

> The courts presume that ordinances enacted in accordance with a local government's police power are valid and constitutional. Rivergate Wine & Liquors, Inc. v. City of Goodlettsville, 647 S.W.2d at 634. Thus, persons challenging an ordinance on substantive due process grounds have the burden of proving that the ordinance is not reasonably related to a valid governmental purpose. Rivergate Wine & Liquors, Inc. v. City of Goodlettsville, 647 S.W.2d at 634; Fritts v. Wallace, 723 S.W.2d at 950.

We are of the opinion that, in this case, as in Martin, supra, the plaintiffs have failed to carry their burden of proving that the ordinance is not reasonably related to a valid governmental purpose. This conclusion, however, is not dispositive of this appeal.

The ordinance, under consideration here, places the onus upon the proprietor of an affected business to ascertain whether his customers are in possession of alcoholic beverages upon entering the business premises. Intent or knowledge that a customer is in possession of alcohol is not a part of the ordinance. Therefore, simple possession by a patron of an alcoholic beverage or beer on the premises of the business subjects the proprietor to liability. In addition, the phrase "non-intoxicating beverages to be mixed

8

with and/or consumed with alcoholic beverages," is a prohibition that is so broad that it encompasses all potable liquids, including water. Literally construed, the ordinance requires the business to ascertain the intended use of a non-intoxicating beverage before a sale can be made to the consumer. Again, no intent or knowledge is required on the part of the business to constitute a violation. We are of the opinion that the ordinance, as written, is overly broad to the extent that it is unduly and overly vague.

The principles guiding us concerning vagueness are established by Davis-Kidd Booksellers, inc. v. McWherter, 866 S.W.2d 520 (Tenn.1993):

> The standard normally used in determining if a statute is vague, is whether "men of common intelligence must necessarily guess at its meaning." See, e.g., Broadrick v. Oklahoma, 413 U.S. 601, 607, 93 S. Ct. 2908, 2913, 37 L. Ed. 2d 830 (1973); Leech, 582 S.W.2d at 746. [Leech v. American Booksellers Ass'n, Inc., 582 S.W.2d 738 (Tenn. 1979)]. If a statute is to avoid unconstitutional vagueness, it must "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." Kolender v. Lawson, 461 U.S. 352, 358, 103 S. Ct. 1855, 1858, 75 L. Ed. 2d 903 (1983)(citations omitted).

> Although the doctrine focuses both on actual notice to citizens and arbitrary enforcement, the Supreme Court has recognized that the more important aspect of the vagueness doctrine is not actual notice, but the other principle element of the doctrine – **the requirement that a legislature establish minimal guidelines to govern law**

9

**enforcement.** See <u>Smith v. Goguen</u>, 415 U.S. at 574, 94 S. Ct. at 1247-1248. (Emphasis ours).

The ordinance does not establish minimal guidelines, or for that matter, any guidelines for its enforcement. We are greatly influenced in reaching our conclusion by the testimony of the defendant, Philip Keith, Chief of the Knoxville Police Department.

Upon examination by the plaintiff, the following questions were asked and Chief Keith gave the indicated responses.

Q. The question is: Chief, under your reading and application of Section 4.2A, what is a club restaurant or other business going to have to do to make sure it does not permit or allow brown bagging of alcohol or beer to be conducted on their premises?

A. Well, one, they would have to ask the people coming in, if they visibly can see packages containing alcoholic beverages, not to bring them in. That would be what we think a prudent person would say — would do. Secondly, as much as we do today in all regulated establishments, we coach and warn operators and managers what is a violation and if it is persistent or there's a pattern or there's a direct demonstration of contempt for the ordinance, then we move to a different direction.

Q. So, therefore, it is your understanding then, Chief, that with respect to every restaurant in this town that is opened past one a.m., every restaurant, every night club, every business, that they are going to have to ask every patron on the premises whether or not they are carrying a flask of alcoholic beverages or a bottle of beer; is that correct?

10

A.  You might have it posted, much like we do with
firearms in alcohol-serving establishments, that no
alcoholic beverages are permitted to be brought in
after one o'clock.  That would be a reasonable and
prudent request.

Q.  And what about if people come on to the premises
before one o'clock, can they brown bag before one
o'clock?

A.  Yes.

Q.  And what happens if someone is on the premises at
12:30 with a brown bag of alcoholic beverage and
stays on the premises past one o'clock, must they
then be asked to dispose of that, that brown bag
liquor, in order not to be in violation of this
ordinance?

A.  Since they can't bring it in, if they are in
possession of it, I would assume that that would
require them to move it to a different location
than on the premises themselves.

Q.  Well, with respect to if someone comes to a
restaurant with a bottle of wine in a brown bag and
that restaurant allows them to serve that wine
prior to one a.m., at one a.m. must that restaurant
then confiscate that bottle or tell the person they
must have to put the bottle away or have to leave
the premises in order to be in compliance with the
ordinance?

A.  I think they would have to take some steps to gain
control of the beverage.  They check coats at many
restaurants, I'm sure they can check a bottle of
unfinished wine.

Q.  So initially, then, the requirement, as you see it,
is that there has to be a notice placed on all
establishments, restaurants, nightclubs, and
business opened past one a.m. that prohibits brown
bagging esentially and that, number two, I believe
you said that the owners of these establishments
must ask all customers if they are carrying these
beverages; is that correct, sir?

A.  If they see them carrying them after one o'clock.

11

Q. If they don't see them carrying them, must they engage in a search in order to protect themselves so as not to have been found permitting or allowing these beverages to be on the premises?

A. No, I don't think that is — I think that is unreasonable. ...

Q. Now, as to the establishments which operate after one o'clock in the morning, is it your contention that underneath this statute that there is no requirement of a search or a frisk and that if someone should consume a brown bag beverage after one a.m. and the proprietor of the establishment did not know that they brought it on the premises, that there would be no violation of this ordinance?

A. That's not the intent. What we would say if an officer witnessed that, the officer would advise the manager or the bartender who was serving the mixer what was taking place and would expect them to take reasonable action to secure the alcoholic beverage or ask the patron to depart.

Q. Well, a follow-up question: Are you saying that the first view or the first drink is for free, in other words, if a police officer is on the premises, sees somebody pull out a flask, then the owner is told to have that person remove the beverage before they be cited underneath this ordinance?

A. No, there would be other factors involved, the officer's knowledge of the establishment, whether there was a pattern of abuse, a number of issues like that.

Q. So the discretion to enforce the statute would not be based upon the language of the statute but rather upon the actions of the policer in terms of his or her knowledge of the establishment; is that correct?

A. That's what the ordinance requires.

12

Chief Keith's testimony further continues along the lines set out above.  In sum and substance, the testimony reflects that whether a citation is issued is in the officer's discretion.  We are of the opinion that if the Chief of Police is unable to articulate any objective guidelines to be followed in enforcement of the ordinance, then it must be assumed "that ordinary people can [not] understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." Further, it is impermissible to allow an ordinance to be enforced at the discretion of an individual police offier. Thus, the ordinance fails the standard set out in Davis-Kidd, supra.  "Men of common intelligence must necessarily guess at its meaning" and the ordinance is unacceptably vague for failure to "establish minimal guidelines to govern law enforcement."  Further, we believe that the ordinance, as written is unreasonable and oppressive as applied to the affected businesses.  In Rivergate Wines, supra it is said:

> While recognizing the broad powers of the state – and municipalities exercising power pursuant to statute – to restrict, regulate, or to prohibit altogether, the sale of liquor, the court held that, however absolute the police power may be, the exercise of that power is subject to the implied limitation of reasonableness. The police power does not include the authority to promulgate and enforce regulations which are unreasonable, oppressive or discriminatory.

Rivergate Wines at page 171.

13

We do not mean to imply that there can be no regulation of brown bagging. Ordinances regulating the sale of alcoholic beverages have been consistently upheld where they bear some relation to a legitimate interest protectable by the police power, and the regulation is not unreasonable or oppressive as to the licensee. Rivergate Wine and Liquors v Goodlettsville, 647 S.W.2d 631 (Tenn. 1983); Metro Government of Nashville and Davidson County v. Martin, 584 S.W.2d 643 (Tenn. 1979). It has been held permissible to limit the issuance of liquor licenses to one family to two licenses, Parks v. Allen, 426 F.2d 610 (1970); and to prohibit a licensed retailer from selling chilled or refrigerated alcoholic beverages, Rivergate Wine & Liquors v. Goodlettsville, 647 S.W.2d 631 (Tenn. 1983).

There is no question but that a local government has a legitimate interest in diminishing the number of incidents of public drunkenness and the number of intoxicated drivers operating within the city limits. See Rivergate Wine & Liquors v. Goodlettsville, 647 S.W.2d 631 (Tenn. 1983). This interest is furthered by ordinances which regulate the sale of beer for on-premises consumption, of which the anti "brown bagging" ordinance is a part. For example, Metropolitan Code of Laws, Section 5-1-18.3 provides that permits to sell beer for on-premise consumption shall not be issued except to establishments that have seating capacity for 25 persons and where meals are regularly

14

served. This requirement increases the likelihood of joint consumption of food and alcohol and thereby lessens the intoxicating effect of the alcohol consumed on the premises. Metropolitan Government also has an ordinance which prohibits the sale of beer to any person who is already intoxicated. Metropolitan Code of Laws, Section 5-1-23.3(j). State law also prohibits the sale of mixed drinks, which are only legally sold for on-premise consumption, to anyone who is "visibly intoxicated," T.C.A. § 57-4-203. These requirements evidence an awareness on behalf of the governments that the consumption of alcohol to the point of intoxication impacts on the general health and welfare of the community.

In the case of <u>Metropolitan gov't v. Shaw</u>, 721 S.W.2d 799 (Tenn. 1986), the court in discussing an anti-brown bagging ordinance made the following observation:

> In this case, there is evidence that "brown bagging," which is generally unregulated, is a prime cause in incidents of public drunkenness and of drivers operating automobiles while under the influence of an intoxicant. According to Sergeant Windsor, the police are required to respond to many more calls to beer taverns that permit "brown bagging" than they do to establishments that "ha[ve] a liquor license or ha[ve] just a plain beer license." In Metropolitan Nashville, sales of beer must cease between the hours of 3:00 a.m. to 6:00 a.m. except for Sunday morning, when sales are prohibited from 3:00 a.m. to 12:00 noon. There is evidence that licensed beer taverns catering to "brown baggers," remain open during the hours beer sales are prohibited in order to sell mixers to the "brown bag-

15

gers" and to provide them with a place to continue their drinking. ...

<u>Shaw</u>, supra,721 S.W.2d 801.

We find the evidence in <u>Shaw</u> and the evidence in this case to be strikingly similar as it relates to the demonstraton of a legitimate public interest in diminishing the number of incidents of public drunkenness and the number of intoxicated drivers operating within the city limits.

From all the authorities studied and cited, it is patently clear that a municipality such as Knoxville possesses the inherent power to enact an ordinance to carry out the intent and purposes of the ordinance under consideration as stated in its caption. The ordinance must be properly drafted and enacted, however, to be permissible. We are of the opinion that the ordinance under consideration does not meet the required tests and is, therefore, invalid.

The purposes and intent of the ordinance are commendable and are designed to reduce public drunkenness and the operation of motor vehicle by persons in an alcoholic impaired condition. No matter how commendable, meritorious or admirable the purposes of an ordinance are, it is still invalid unless it meets the tests hereinbefore established and set out.

16

For reasons stated, we reverse the judgment of the trial court and remand the case to the trial court for entry of a judgment consistent with this opinion. Costs are assessed to the appellees.

_____
Don T. McMurray, Judge

CONCUR:

_____
Herschel P. Franks, Judge

_____
William H. Inman, Senior Judge

IN THE COURT OF APPEALS
AT KNOXVILLE


UNDERGROUND II, INC., d/b/a     )  KNOX CHANCERY
THE BOILER ROOM                 )  C. A. NO. 03A01-9709-CH-00425
                                )
        Plaintiff-Appellant     )
                                )
                                )
vs.                             )  HON. SHARON BELL
                                )  CHANCELLOR
                                )
                                )
THE CITY OF KNOXVILLE,          )  REVERSED AND REMANDED
TENNESSEE; VICTOR ASHE, MAYOR   )
OF KNOXVILLE, PHILIP KEITH,     )
CHIEF OF KNOXVILLE POLICE       )
DEPARTMENT; LARRY COX; IVAN     )
HARMON; CARLEEN MALONE; NICK    )
PAULIS; WILLIAM POWELL; JACK C. )
SHARP; ED SHOUSE; JEAN TEAGUE;  )
AND GARY UNDERWOOD, IN THEIR    )
OFFICIAL CAPACITIES,            )
                                )
        Defendants-Appellees    )


**JUDGMENT**

     This appeal came on to be heard upon the record from the Chancery Court of Knox County, briefs and argument of counsel. Upon consideration thereof, this Court is of the opinion that there was reversible error in the trial court.

     We reverse the judgment of the trial court and remand the case to the trial court for entry of a judgment consistent with this opinion.  Costs are assessed to the appellees.


                              PER CURIAM